# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| HEATHER STEELE individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | **Case No. 13-62823-RSR** |
| v. | ) ) | |
| ARISE VIRTUAL SOLUTIONS, INC. | ) ) | |
| Defendant | ) ) ) | |

## PLAINTIFF'S MOTION TO FACILITATE NOTICE TO SIMILARLY SITUATED EMPLOYEES INFORMING THEM OF THEIR RIGHT TO OPT-INTO THIS CASE PURSUANT TO § 216(b) OF THE FAIR LABOR STANDARDS ACT

This case has been filed as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, on behalf of Customer Support Professionals ("CSPs") who have worked for Defendant Arise Virtual Solutions, Inc. ("Arise"). Arise is a company specializing in customer support for such companies as AT&T, Apple, Rogers Telecom, and TurboTax. CSPs work out of their homes to provide customer services, support, and sales to these companies, who are Arise's clients. In order to perform their work, CSPs log into Arise's computer system every day and are subject to close supervision by Arise. Pursuant to an admitted national policy, Arise does not classify CSPs as employees, but rather as independent contractors (in Arise's words, Independent Business Operators ("IBOs"), or agents of IBOs).[1]

---

[1]     As discussed in more detail below (see infra at 9-11), a group of CSPs previously brought a virtually identical lawsuit against Defendant Arise Virtual Solutions, Inc. See Otis v. Arise Virtual Solutions, Inc., Case No. 12-CV-62143, Amended Complaint, Doc. 21 (S.D. Fla. March 13, 2013). In Otis v. Arise, Defendant Arise moved to compel the

As set forth in the Complaint, Plaintiff alleges that she and all other CSPs have been misclassified under the FLSA as independent contractors and that they are in fact Arise's employees.  Plaintiff alleges that Arise has violated the FLSA by failing to pay CSPs for all their time worked, including training time, and requiring CSPs to pay for their training, as well as various out-of-pocket expenses that should have been borne by Arise as the employer (such as for the computer software and hardware that is required for CSPs to perform their jobs).  See Arriaga v. Florida Pac. Farms, L.L.C., 305 F.3d 1228, 1237 (11th Cir. 2002) (finding FLSA violation where workers were required to pay pre-employment expenses that were necessary for them to perform their jobs).[2]  Plaintiff

---

named plaintiffs to arbitration based on arbitration agreements they had signed with Arise.  The Otis court granted Arise's motion to compel arbitration for these plaintiffs, prior to considering the plaintiffs' motion for notice to be issued pursuant to 29 U.S.C. § 216(b).  See Otis v. Arise, 12-cv-62143, Doc. 41 at 8 (August 5, 2013, S.D. Fla.) (attached here as Exhibit C).  The court decided that it must decide the arbitration issue first because all of the named plaintiffs had signed arbitration agreements.  The Otis court did not rule on the merits of conditional certification; it simply held that, in light of its order compelling the named plaintiffs to arbitration, no named plaintiffs remained who could maintain a suit on behalf of themselves and others similarly situated.  Id.

Here, however, the named plaintiff in this case has not signed an arbitration agreement.  The Court should therefore issue notice here, for the reasons described below.  Then, if Arise CSPs opt in to the case who have signed arbitration agreements, the Court can consider at that time whether to compel those CSPs to arbitration (should the parties have a dispute on that question).  See D'Antuono v. C & G of Groton, Inc., 2011 WL 5878045, at *3 (D. Conn. Nov. 23, 2011) (in an independent contractor misclassification case, granting motion to issue notice pursuant to 29 U.S.C. § 216(b) where one lead plaintiff had not signed arbitration agreement, although other lead plaintiffs were compelled to arbitration; the court held that after notice and opportunity to opt-in period, it could then consider whether to compel arbitration for any opt-in plaintiffs who had signed arbitration agreements); Lloyd v. J.P. Morgan Chase & Co., Case No. 11 Civ. 9305, Doc. 185 (S.D.N.Y. April 1, 2014) (magistrate report and recommendation reaching the same conclusion as D'Antuono) (attached as Exhibit D).

[2]   Paying for these expenses, as well as their training, costs CSPs hundreds, or even thousands, of dollars each. Because they are required to pay for their training and other expenses, CSPs do not receive minimum wage for all their time worked,

now seeks to protect the rights of all Arise CSPs who may wish to recover reimbursement for these unpaid wages and expenses, by notifying them of the pendency of this case and that they may assert a claim under the FLSA, 29 U.S.C. § 216(b).  Plaintiff has attached a copy of the proposed notice as Exhibit A and proposed opt-in form as Exhibit B.[3]

The standard for obtaining notice under § 216(b) is very lenient.  Consistent with the "broad remedial purpose of the [FLSA]", Plaintiff need only show a reasonable basis for finding that there are other workers who are similarly situated.  Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1217-1218 (11th Cir. 2001); Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996).  This standard is far more lenient than the standard for obtaining class certification under Rule 23 of the Federal Rules of Civil Procedure:  Plaintiff need not prove that common questions will predominate; that a class is superior; or that the representative plaintiff's claims are typical.  Grayson, 79 F.3d at 1110, n. 12.  Indeed, Plaintiff need only show that she is similarly, rather than identically, situated to class members.  Id. at 1096.

Here, CSPs are all similarly situated.  As discussed further below, all CSPs fulfill the same functions on behalf of Arise; simply stated CSPs provide customer support to Arise's clients.  Although Arise subjects all CSPs to a rigorous screening process, a lengthy training program, continuous monitoring and strict performance standards, Arise does not recognize CSPs as employees.  Rather, Arise classifies CSPs as independent

---

particularly in their first weeks of employment.  In Arriaga, the Eleventh Circuit held that this constitutes a minimum wage violation under the FLSA.

[3]    A lawsuit alleging nearly identical claims was filed several years ago on behalf of all Arise CSPs working in California. Perry v. AT&T Mobility LLC, Case No. 11-01488, Third Amended Complaint, Doc. 88 (N.D. Cal. July 10, 2012) (attached here as Exhibit E).  That case settled for $ 1.2 million.  Perry, Case No. 11-01488, Motion for Settlement Approval, Doc. 100 at 8 (N.D. Cal. May 14, 2013) (attached here as Exhibit F).

contractors, or agents of other CSPs.  Plaintiff contends that Arise's "Independent Business Owner" model, whereby the company does not acknowledge CSPs to be employees, is a sham and that all CSPs (regardless of whether they contract directly with Arise or obtain work from Arise through an IBO), are in fact employees of Arise under the FLSA.  Moreover, in violation of the FLSA, all CSPs are required to pay for the equipment and training necessary to perform their work, and participate in lengthy trainings (which may last for weeks, or even months) for which they are not paid.  In other words, Arise subjects all CSPs to the same standards and policies, with regard to both job performance and pay, no matter where in the country they are located.

Unlike a Rule 23 class action, the statute of limitations for potential opt-in plaintiffs is not tolled until they actually opt-in to the suit.  See 29 U.S.C. § 216(b).  Unfortunately, the vast majority of CSPs do not know that they have a claim that they have been improperly required to pay for business expenses and training, and not paid for training.  In order to protect the rights of these workers, they should be apprised of the pendency of this case in a timely manner; otherwise, the claims of many such workers may be barred by the FLSA statute of limitations.  Finally, notice should issue in this case in order to advance the broad remedial purpose of the FLSA and prevent further duplicative litigation.  Notice is intended to "avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."  Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003).  Because notice under § 216(b) is plainly warranted given Arise's uniform practice of misclassifying CSPs and requiring CSPs to pay for their equipment, as well as their

training, the Court should authorize notice so as to inform other CSPs of their rights and their ability to bring this claim.

As noted above, for any CSPs who opt-in to the case who have signed an arbitration clause, the Court could then consider whether those CSPs' claims should be compelled to arbitration (if the parties have a dispute on that question).  In furtherance of the policy that the Supreme Court has recognized under the FLSA for employees to have notice of their rights and fair opportunity to pursue claims they may have under the FLSA (which is necessary to ensuring that employers comply with the FLSA), see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989), the Court should first allow notice to issue, and then consider any issues that may be raised regarding arbitration.  See D'Antuono v. C & G of Groton, Inc., 2011 WL 5878045 (allowing notice to be issued where one lead plaintiff was not subject to an arbitration agreement, even though others had already been compelled to arbitration); Lloyd v. J.P. Morgan Chase & Co., Case No. 11 Civ. 9305, Doc. 185 (S.D.N.Y. April 1, 2014) (magistrates report and recommendation reaching the same conclusion as D'Antuonol)  Otherwise, Arise may benefit from its continuing violation of the FLSA, comfortable in knowing that the vast majority of its CSPs will never know that they may have claims for unpaid wages and expense reimbursements.[4]

## I.    FACTS

Plaintiff works for Arise as a CSP providing customer support to Arise's clients. According to its website, Arise "customize[s] and deliver[s] high-quality voice, e-mail,

---

[4]    As noted above in note 3, Arise CSPs in California have already recovered in a settlement for these alleged wage violations.  However, without notice being issued to CSPs in other parts of the country regarding the claims alleged here, Arise has been free to continue its practices throughout the rest of the country with impunity.

chat, and mobile customer service, technical support, and sales." (Excerpts from Arise's Website at 1, "Company Overview", attached as Exhibit G).  In order to provide those services, Arise employs approximately 25,000 CSPs who work out of their homes around the country, but none of whom are classified by Arise as employees.  (Exhibit G, at 2-3, "Partner with Arise";  "The Homeshoring Phenomena" Arise Press Release, at 2, attached as Exhibit H; Independent Business Owner Reference Guide, at 2, attached as Exhibit I).  CSPs process customer-initiated calls involving technical support, sales, and customer service.  (See CSP declarations, attached as Exhibit J).[5]  Customer calls are routed to CSPs who work out of home offices.  (Exhibit H, at 2; Exhibit G, at 3, "Partner with Arise").  CSPs are required to be logged on to an Arise chat room whenever they are working so that they can communicate with supervisors, who are called "performance facilitators." (Exhibit G, at 6, "Performance Compliance"; Exhibit H).

As a precondition of working for Arise, CSPs must undergo a "rigorous" six stage screening process. (Exhibit I, at 10; "Virtualizing the Workplace" at 8-9, attached as Exhibit K).  All CSPs are required to undergo this process regardless of whether they contract directly with Arise or provide services to Arise through an IBO. (Exhibit I, at 10; Exhibit J).  CSPs must complete a detailed profile, a skills assessment, a voice assessment, a background check, and a client-specific screening. (Exhibit I, at 5, 10, 48; "The Homeshoring Phenomena", at 8-9, attached as Exhibit L).  Finally, CSPs must participate in and pass "CSP 101" which is a "[b]asic course providing the fundamental

---

[5]      The attached CSP declarations describing CSPs' work and Arise's pay practices were first submitted as an attachment to the plaintiffs' motion for conditional certification in Otis v. Arise, Case No. 12-CV-62143.   Plaintiff Heather Steele's declaration is included at pages 7-8.  Although several of these declarants (but not Ms. Steele) were compelled to pursue their claims in arbitration, these declarations demonstrate the commonality of the work performed by CSPs around the country.

customer service skills required to provide services to an Arise client." (Exhibit I, at 40; 47; Exhibit L, at 12).  Only upon completion of this course does a worker receive the certification as a Client Support Professional that is required as a precondition of working for Arise.  (Exhibit I, at 45, 47).

After obtaining basic certification, CSPs are assigned to a specific Arise client and must undergo a second round of training that is tailored to that client's needs. (Exhibit I, at 45).  CSPs must obtain a certification for the successful completion of this second round of client specific training prior beginning work for Arise.  (Exhibit I, at 45). Although the second round of training varies in length depending on the client, it may run as long as three months.  (Exhibit J).  Arise administers and develops the curriculum for both the basic "CSP 101" course and all client specific training courses.  (Exhibit I, at 46; Exhibit L, at 12).

Arise requires prospective CSPs to pay for their training.  (Exhibit G, at 8-9, "High Caliber Talent" and "Customer Contact Solutions"; Exhibit I, at 5, 12; Exhibit J).  Arise charges prospective CSPs approximately $99 for "CSP 101."  (Exhibit I, at 5; Exhibit J). Arise charges between $59 and $299 for the client specific certification course.  (Exhibit I, at 5, 12; Exhibit J).  In addition to being required to pay for the training, CSPs are not compensated for the time they spend in training.  (Exhibit G, at 9, "Customer Contact Solutions"; Exhibit J). Additionally, prospective CSPs are required to purchase all equipment and tools required to perform their work for Arise. (Exhibit G, at 8, "High Caliber Talent"; Exhibit J).  The required equipment and tools include a computer, high speed internet, a telephone headset with keypad, and a specialized headset for certification courses.  (Exhibit I at 5, 31, 43; Exhibit J).  Additionally, Arise has extensive

operating system and hardware requirements.  (Exhibit I, at 43).  Arise itself estimates that equipment and training costs on average cost approximately $314. (Exhibit I, at 5).

Once a CSP begins work, he or she is subject to constant monitoring and evaluation by Arise.  In fact, CSPs' rate of pay varies per pay period depending on Arise's evaluation of their work performance.  (Exhibit G, at 6, "Performance Compliance"; Exhibit J).  Arise employs "performance metrics" to evaluate CSPs performance and determine pay rate on an ongoing basis.  (Exhibit I, at 49; Exhibit J).  Certain performance metrics are common to all CSPs, no matter which Arise client they provide services to.  (Exhibit I, at 46).  CSPs are supervised by Arise "performance facilitators" that monitor CSP job performance and customer satisfaction with CSPs' calls.  (Exhibit G, at 6 "Performance Compliance"; Exhibit J).

Additionally, as a condition of employment, CSPs are required to participate in ongoing unpaid trainings.  (Exhibit I).  As a result of these trainings, as well as the requirement that CSPs pay for their training and expenses to purchase their equipment, CSPs' wages fall below the minimum wage required by the FLSA.  Indeed, all Arise CSPs' wages fall below minimum wage during their first weeks or months, since they are not paid for training, but rather themselves have to pay for the training, as well as equipment.  See Arriaga v. Florida Pac. Farms, L.L.C., 305 F.3d 1228, 1237 (11th Cir. 2002) (holding that workers must be reimbursed for pre-employment expenses so as to bring their net first week of wages at least up to the minimum wage)

## II.    ARGUMENT

### A. Consistent with the remedial purpose of the FLSA, the legal standard for obtaining conditional certification is lenient.

Under the FLSA, an employee may bring an action on his or her own behalf and on behalf of all others "similarly situated."  29 U.S.C. § 216(b).  However, in order to be covered by the suit, potential participants in the FLSA collective action must affirmatively "opt-in" to the case.  Id.; Hipp, 252 F.3d at 1216.  The statute of limitations for each potential class member is not tolled until he or she individually opts into the litigation.  29 U.S.C. §256(c).  Therefore, in order to protect an individual's FLSA rights from being diminished through lack of notice, the Supreme Court has held that district courts should facilitate the issuance of a notice informing potential opt-in plaintiffs of the pending FLSA collective action.  Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).  Furthermore, court approval and facilitation of notice to the putative plaintiffs serves the twin judicial policies of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."  Id. at 171.  But all of "[t]hese benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action so that they can make informed decisions about whether to participate."  Id. at 170.  The Eleventh Circuit has authorized district courts to use a two-stage process to determine whether to create an opt-in class and to facilitate notice.  Hipp, 252 F.3d at 1219.  At the first stage, known as the "notice" stage, a court reviews a plaintiff's pleadings and affidavit to determine preliminarily whether class certification is appropriate.  Id. at 1218.

The determination of whether class certification should be granted at this stage is made using a lenient standard, and typically results in "conditional certification" of a

representative class.  Id.  At this stage, the plaintiffs' burden is considered "light."

Hernandez v. Two Bros. Farm, 2008 WL 4613069, at *1 (S.D. Fla. 2008).  In

considering a motion to conditionally certify the class in a wage and hour dispute, the

courts do not reach the merits of the case.  Kerce v. W. Telemarketing Corp., 575 F.

Supp. 2d 1354, 1358 (S.D. Ga. 2008).  Rather, at this stage, the plaintiffs must only

make a foundational showing that there are other employees who are similarly situated

with respect to their job requirements and pay provisions.  Hipp, 252 F.3d. at 1217-18;

Grayson, 79 F.3d. at 1096.[6]  Here, Plaintiff has clearly met this low burden, and in fact

has overwhelmingly demonstrated that there is a reasonable basis for finding that there

are many others similarly situated who, once they receive notice, may desire to pursue

the claims asserted here and opt-in to the case.[7]

**B. As a threshold issue, the court's denial of the plaintiffs' motion for conditional certification in Otis v. Arise Virtual Solutions Inc. does not preclude this Court from granting this motion in this case.**

As noted above, Plaintiff initially attempted to pursue her claims against Arise as

an opt-in plaintiff in Otis v. Arise, 12-CV-62143, Amended Complaint, Doc. 21 (S.D. Fla.

March 13, 2013), a previously filed lawsuit in which the plaintiffs brought virtually

identical claims under the FLSA against Arise.  In that case, Arise moved to compel the

named plaintiffs to arbitration based on arbitration agreements which the plaintiffs had

---

[6]    The second stage of the certification occurs after discovery has been completed. Upon a defendant's motion for decertification, the Court may reevaluate whether the named plaintiff is similarly situated to the class.  Kerce, 575 F. Supp. 2d at 1358, citing Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007).

[7]    Then, if they are subject to a valid arbitration agreement, the Court may consider whether to compel them to arbitrate their claims.  But without the issuance of notice, these workers will not know of their rights asserted in this case and their ability to bring such a claim.

signed.  The <u>Otis</u> court granted Arise's motion and issued an order compelling the named plaintiffs to arbitration.  <u>See</u> <u>Otis</u>, Doc. 41, at 8 (August 5, 2013) (attached here as Exhibit B).  At the same time, the <u>Otis</u> court denied the plaintiffs' motion for notice to be issued pursuant to § 216(b).  <u>Id.</u>  However, the <u>Otis</u> court did not rule on the merits of the plaintiffs' § 216(b) motion.  <u>Id.</u>  Rather, the court determined that, because the named plaintiffs had signed arbitration agreements, it had to address those agreements first, before considering the § 216(b) motion; it then denied plaintiffs' § 216(b) motion based on the fact that none of the named plaintiffs remained who could pursue a case in court.  <u>Id.</u>

Unlike the named plaintiffs in <u>Otis</u>, the named plaintiff in this case, Heather Steele, did not sign an arbitration agreement with Arise.  <u>See</u> Declaration of Heather Steele (attached here as Exhibit M).  Thus, this case is just like the case of <u>D'Antuono v. C & G of Groton, Inc.</u>, 2011 WL 5878045, at *3 (D. Conn. Nov. 23, 2011), another case alleging independent contractor misclassification under the FLSA.  There, the court initially granted a motion to compel arbitration with respect to several plaintiffs who had signed arbitration agreements.  <u>See</u> <u>D'Antuono</u>, 789 F. Supp.2d 308 (D. Conn. 2011).  However, there was one plaintiff in the case who had not signed an arbitration agreement.  <u>D'Antuono</u>, 2011 WL 5878045, at *2.  The case therefore continued for her in court, and the court granted her motion for § 216(b) notice to issue, reasoning that, even in light of the likelihood that many class members had signed arbitration agreements similar to those signed by the other named plaintiffs, those class members still had the right to receive notice of the action, and if need be litigate the enforceability (with respect to themselves) of any arbitration agreement that they had signed.  <u>Id.</u>, at

*3-5. And, for any who were found to have enforceable arbitration agreements, the court could then compel them to arbitration. Id. at *3-4.

Similarly, here, the fact that other potential opt-ins in this action may have signed arbitration agreements similar to the named plaintiffs in Otis does not mean the Court should not order the issuance of notice pursuant to § 216(b). Significantly, in another strikingly similar case, the District Court for the Southern District of Florida conditionally certified a class under § 216(b), rejecting the defendant's argument that the plaintiff could not meet the similarly situated requirement because the vast majority of the defendant's employees, including nearly all of the opt-in plaintiffs, had signed arbitration agreements. Sealy v. Keiser Sch., Inc., 2011 WL 7641238, at * 4 (S.D. Fla. Nov. 8, 2011). The Sealy court reasoned that the defendant was seeking a higher level of scrutiny than was appropriate at the conditional certification stage. Sealy, 2011 WL 7641238, at *3, citing Ali v. Sugarland Petroleum, 2009 WL 5173508 (S.D. Tex. December 22, 2009) (refusing to consider at the notice stage the defendants' argument that certain employees signed arbitration agreements).

The Court should take a similar approach here. The proper course should be for the notice to be issued, and then for any opt-in plaintiffs who signed arbitration agreements, those plaintiffs can be given the opportunity to challenge the enforceability of the agreement as to themselves (for instance, by raising formation challenges, which the court in D'Antuono said it would consider, even for opt-in plaintiffs who had signed the same arbitration agreement the court found to be enforceable).[8] See D'Antuono, 2011 WL 5878045, at *4 (a determination that an arbitration agreement is enforceable as to

---

[8] Or, alternatively, the Court may then compel the opt-in plaintiffs to arbitration, if they do not have valid defenses to the enforceability of the arbitration agreement.

certain named plaintiffs cannot be automatically applied to arbitration agreements signed by class members "who have not had a chance to contest, on their individual facts, the applicability of their agreements.").

Indeed, a number of other federal courts have likewise conditionally certified classes and ordered notice to issue pursuant to § 216(b) before ruling on the enforceability of arbitration agreements.  See Whittington v. Taco Bell of America, Inc., 2011 WL 1772401 (D. Col. May 10, 2011); Ali v. Sugarland Petroleum, 2009 WL 5173508 (S.D. Tex. Dec. 22, 2009); Davis v. Novastar Mortg., Inc., 408 F.Supp.2d 811 (W.D. Mo. 2005); Villatoro v. Kim Son Restaurant, L.P., 286 F.Supp.2d 807 (S.D. Tex. 2003).  These cases are rooted in a simple but powerful principle: it is fundamentally unfair to deny notice to an employee of the pendency of an FLSA case that may affect his or her rights, and to prospectively take away the employee's right to assert those claims on the untested assumption that he or she is bound by an arbitration agreement.

**C. This Court should authorize notice because Plaintiff has identified a reasonable basis for her claim that she is similarly situated to other Arise CSPs with respect to her claims of misclassification and FLSA wage violations.**

Plaintiff's claim is simple: she contends that Arise misclassified her and all other CSPs as non-employee independent contractors and required them to pay for their training and other expenses, thereby depriving them of their rights under the FLSA.  At the notice stage, rather than evaluate the merits of Plaintiff's misclassification claim, the Court need only determine whether Plaintiff and those to whom she seeks to have notice issued are similarly situated with respect to their claims.  See Schumann v. Collier Anesthesia, P.A., 2013 WL 645980, at *2 (M.D. Fla. Feb. 21, 2013) (refusing to review the merits of the plaintiffs' FLSA claims at the conditional certification stage); Scovil v. FedEx Ground

Package Sys., Inc., 811 F. Supp. 2d 516, 519 (D. Me. 2011) ("I will have to deal with the [relevant legal test] conclusively when I determine ultimately whether the drivers are employees or independent contractors, but the question for me now is simpler: whether the drivers in the proposed class are similarly situated."); Kerce, 575 F.Supp.2d at 1358 ("In considering a motion to conditionally certify the class in a wage and hour dispute, the Court does not reach the merits of the case."); Scantland et al. v. Knight Enterprises, 09-CV-01985, Doc. 104, at 8 (M.D. Florida, Sept. 30, 2010) (attached here as Exhibit N) (conditionally certifying a class in a case challenging misclassification of cable installers as independent contractors).  Plaintiff has more than sufficiently demonstrated that she is similarly situated to other CSPs around the country with regard to her claim of misclassification.[9]

Similarly, the named plaintiff in this case is more than sufficiently similarly situated to CSPs around the country with respect to their claims of misclassification.  Specifically, Arise classifies all CSPs as non-employees (either by classifying them as IBOs or agents of IBOs); all CSPs perform customer support functions on behalf of Arise, using Arise software, out of their home offices; all CSPs are subject to the same rigorous pre-employment screening; all CSPs are required to undergo training courses developed and

---

[9]      In Kerce, a strikingly similar case to this one, the court granted conditional certification to the plaintiff, a home based customer service agent, who claimed she had been misclassified as an independent contractor and as a result was deprived of her rights under the FLSA. Specifically, like the plaintiff here, Kerce claimed she had been deprived of the minimum wage as a result of her employer's uniform policy of requiring participation in unpaid trainings, and paying customer service agents by the minute rather than by the hour.  Kerce, 575 F. Supp. 2d at 1358-59.  The Kerce court found that all home-based customer service agents were subject to sufficiently uniform policies and standards to make a determination regarding employment status on a class-wide basis.  See id. at 1364 (finding that "the members of the proposed class have the same job title, and the same basic job duties, in that they all field calls from [the alleged employer's] customers.").

administered by Arise; all CSPs are supervised by Arise "performance facilitators"; and all CSPs are continually monitored and evaluated by Arise based on uniform performance metrics. The uniform application of these policies is undisputed; in fact, Arise admits to each of these policies in materials available on its website. Arise's uniform treatment of CSPs is more than sufficient to demonstrate that Plaintiff is similarly situated to other CSPs with respect to her employment status under the FLSA.

Moreover, Plaintiff has provided overwhelming evidence to demonstrate that all CSPs are similarly situated with respect to the alleged minimum wage violations. Specifically, it is undisputed that all CSPs are required, as a pre-condition of employment, to participate in unpaid training lasting up to three months; all CSPs are forced to pay the cost of training; all CSPs are required as a pre-condition of employment, to bear the cost of setting up a home office and purchasing the specific equipment required for them to perform their jobs. Arise admits to each of these policies in materials posted on its website. Accordingly, Plaintiff has met the low burden of demonstrating that she is similarly situated to the putative class with regard to her claims of minimum wage violations.[10]

Furthermore, overwhelmingly courts have granted conditional certification and allowed notice to be issued under § 216(b) where the plaintiffs' employment status (as an employee or independent contractors) is at issue. See, e.g., Bobbitt v. Broadband

---

[10]    See Kerce, 575 F. Supp. 2d at 1362 (finding that the defendant's uniform policy of requiring home based agents to participate in unpaid training sufficient basis for conditional certification); see also Guerra v. Big Johnson Concrete Pumping, Inc., 2006 WL 2290512, at * 4 (S.D. Fla. May 17, 2006) (certifying conditional class and ordering notice to be issued under § 216(b) on the basis that allegations and affidavits demonstrated Plaintiff was similarly situated to others for whom he sought notice with respect to wage claim).

Interactive, Inc., 2012 WL 1898636, at *10 (M.D. Fla. May 23, 2012); Carrera v. UPS

Supply Chain Solutions, Inc., 2011 WL 1303151, at *6 (S.D.Fla. Mar. 31, 2011); Clincy

v. Galardi South Enterprises, Inc., 2010 WL 966639, at *1, 3 (N.D. Ga. Mar.12, 2010);

Gutescu v. Carey International, Inc., 2003 WL 25586749, at *2, 15 (S.D.Fla. 2003).

> **D. This Court should authorize notice because Plaintiff has sufficiently demonstrated that additional CSPs would opt-in if they are provided notice of the current action.**

Plaintiff expects that Arise may argue that there is insufficient evidence that other

CSPs would want to opt-in to this case, should notice issue under § 216(b).  However,

the fact that a number of CSPs already opted in to the Otis case (even though no notice

had yet issued, but instead information about the case was only spread informally

through word of mouth), demonstrates that there will be interest in pursuing these

claims by other CSPs, if only they were to know about this case.

Moreover, as a threshold issue, as the court noted in Quinn v. Endo

Pharmaceuticals:

> The goal of conditional certification is to notify potential class
> members.  Simply put, to require that the plaintiff show that
> potential class members -- who have not yet been notified -- wish to
> join the class is to put the cart before the horse.

Quinn v. Endo Pharmaceuticals, Case No. 10-CV-11230 (order granting conditional

certification) (D. Mass. June 1, 2011) (attached as Exhibit O).  Thus, courts that have

inquired into whether there has already been "interest" shown in the case have turned

the purpose of § 216(b) notice on its head.  The entire purpose of early conditional

certification and notice is to apprise individuals of the existence of an action so that they

can either opt in or decline to opt in.  Jirak v. Abbot Laboratories, 566 F. Supp. 2d 845,

848-851 (N.D. Ill. 2008); Delgado v. Ortho-McNeil, 2007 WL 2847238, *3 (C.D. Cal.

2007).   It thus makes no common sense as to why plaintiffs must make a showing that others wish to join in an action in order to have notice sent out when the whole purpose of sending notice out is to discovery whether there are people who wish to join the action.

Most courts have recognized this very fact in rejecting the requirement that plaintiffs show at the initial conditional certification stage "interest" of other individuals to join the suit.  See Carreiro v. Huntleigh Corporation, No. 1:08-cv-10819 (D. Mass. 2009) (attached as Exhibit P) (order conditionally certifying class and ordering notice be issued, in case where there was only one plaintiff and no opt-ins); Guerra, 2006 WL 2290512 *10 (finding a single affidavit from another individual than the named plaintiff sufficient to establish "a minimum quantum of evidence to warrant the creation of a collective" action).[11]

It is thus debatable, how much "interest" the plaintiffs are even required to show in order to obtain permission to issue opt-in notice. See Dumitrescu v. Mr. Chow Enterprises, 2008 WL 2600667 at *6 (S.D.N.Y. 2008) (two employees who "expressed interest in joining the suit" sufficient to demonstrate interest among the class); Cuzco v. Orion Builders, Inc., 477 F. Supp 2d 628, 634 (S.D.N.Y. 2007) ("plaintiff is not required to indicate specifically how many potential opt in plaintiffs may join the suit . . . the single named plaintiff here has met his burden by successfully demonstrating that there are other workers who are similar situated to him"); Parker 6 v. Rowland Express, 492 F.

---

[11]     Indeed, one primary reason that a requirement for such a showing of interest should not be required is that employees may well be concerned about retaliation should they become plaintiffs in an action before court-supervised notice has issued (with appropriate description of an employer's nonretaliation obligation).

Supp.2d 1159, 1165 (D. Minn. 2007) (noting that interest need not be considered if there are multiple plaintiffs to the suit).

Here, however, Plaintiff has more than sufficiently demonstrated that other similarly situated CSPs would desire to opt-in to the case. As noted above, a number of CSPS already chose to opt-in to pursue these claims in Otis. Although CSPs work out of home offices throughout the country and have little contact with one another (and thus are not in easy communication with their co-workers), in addition to the four named plaintiffs in the Otis action, eleven CSPs opted in to join that case. These CSPs are located in eight different states (Florida, Colorado, Georgia, Louisiana, New York, North Carolina, Michigan, Texas, and Tennessee). Thus, including the named plaintiffs, fifteen CSPs from eight different states showed interest in, and joined, the Otis action. Although the four named plaintiffs were compelled to arbitration and the case was stayed, the level of interest that the Otis case garnered even before notice had issued demonstrates that many CSPs who receive notification of this action, which alleges identical claims as those in Otis, will elect to pursue these claims by opting in, if given notice and opportunity to do so.[12]

---

[12]    Significantly, in Sealy v. Keiser Sch., Inc., 2011 WL 7641238, at * 4, the court distinguished Delano v. MasTec, Inc., a case that Arise may try to rely on for the proposition that notice cannot issue where some plaintiffs have signed an enforceable arbitration agreement. The Sealy court noted that in Delano "the court did not rule that the existence of arbitration agreements resulted in the putative class members not being similarly situated" but rather that plaintiff had been unable to demonstrate that other individuals desired to opt-in over a fifteen month period. Sealy, 2011 WL 7641238, at *4 n. 2. In contrast here, the level of interest garnered by the Otis action clearly demonstrates that many CSPs who receive notice of this action will choose to opt-in.
        Further, the absence of an arbitration agreement applicable to Plaintiff Steele's claims suggests that many CSPs will likely be able to pursue their claims in court. Given that Steele, one of the fifteen plaintiffs in Otis, did not have an arbitration agreement

Thus, Plaintiff has surpassed her minimal burden in demonstrating that fellow CSPs are likely to join the lawsuit if given notice and opportunity to do so. At bottom the question at the § 216(b) notice stage is whether the plaintiffs have identified a similarly situated group of individuals who are subject to a common policy. Here, Plaintiff has undoubtedly met this requirement. <u>See</u> <i>supra</i> at Section C.

### E. Given the remedial purpose of the FLSA, the Court should exercise its discretion to notify CSPs of their right to opt-in to the pending action.

It has long been recognized "that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA." <u>Hoffmann v. Sbarro, Inc.</u>, 982 F. Supp. 249, 261 (S.D.N.Y. 1997), citing <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165 (1989). As the Supreme Court observed when discussing the importance of providing notice to employees, "The broad remedial goal of the statute should be enforced to the full extent of its terms." <u>Hoffman-La Roche</u>, 493 U.S. at 173. Sending notice, and thereby encouraging employees to enforce their rights, helps to advance the FLSA's enforcement mechanism, which relies "not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, --- U.S. ---, 131 S.Ct. 1325, 1333 (2011), quoting

---

with Arise, it is highly likely that many of the other 25,000 CSPs who work for Arise around the country, and are currently unaware of this action, likewise did not sign an arbitration agreement. These CSPs should receive notice of this action and their right to opt-in, and then the Court can sort out (if the parties are not able to reach agreement) which of the opt-in plaintiffs may or may not be bound by an enforceable arbitration clause.

<u>Mitchell v. Robert DeMario Jewelry, Inc.</u>, 361 U.S. 288, 292 (1960).  Employees cannot vindicate rights of which they are not aware.

Without court-supervised notice, which would require Arise to provide a list and addresses and e-mails for disseminating the notice, the plaintiff has no effective way to provide any notice to these other CSPs, and Arise will have succeeded in keeping its other employees in the dark about their rights.  The bottom line is that there is no ready mechanism, absent court-facilitated notice, for other CSPs to learn about their rights.

Issuing notice now will advance the interests both of potential opt-in plaintiffs and the courts.  In FLSA cases, other employees do not get the benefit of automatic tolling when a complaint is filed; instead, each employee's limitations period continues to run unless and until she opts in.  29 U.S.C. § 256.  With each passing day, therefore, every potential class member suffers harm in the form of newly time-barred claims.  The most effective way to ensure that CSPs are fully informed of their rights so that they can act on a timely basis is through court-supervised notice.  But without notice of their rights, the CSPs will not have the opportunity to vindicate their rights.

### III.    CONCLUSION

For the reasons discussed above, the Court should grant this motion for notice to issue pursuant to § 216(b) of the FLSA, and order that Arise provide Plaintiff a list of all CSPs who have worked for Arise across the country in the last three years, including addresses and e-mail addresses, so that notice can be issued.  Plaintiff's proposed notice and opt-in consent form are attached here as Exhibits A and B.

Respectfully submitted,

HEATHER STEELE, individually and on
behalf of all other similarly situated,

By her attorneys,

/s/ Mary Jill Hanson

Mary Jill Hanson, Florida Bar #727369
301 Ocean Bluffs Boulevard
Jupiter, FL 33477
(561) 373-6712
Email: jillocean@bellsouth.net

Shannon Liss-Riordan, *pro hac vice anticipated*
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800
Email: sliss@llrlaw.com

Dated:        April 4, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2014, I caused a copy of this document to be
served by electronic filing on all counsel of record.

 /s/ Mary Jill Hanson
Mary Jill Hanson, Esq.